1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Shonna Coleman, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>Microsoft Corporation,<br><br>     Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff Shonna Coleman ("Plaintiff"), on behalf herself and all others similarly situated, alleges as follows:

## I.  INTRODUCTION

   1.  A browser extension is a software program that adds custom functionality to a web browser. Coupon browser extensions are widely used by online shoppers to identify coupons and discounts on products and services they have already added to their online shopping carts.

   2.  Typically, a consumer must select and install a browser extension, and register for an account, in order to get access to coupons and discounts through that browser extension.

   3.  The Microsoft Shopping browser extension, however, comes pre-loaded on Microsoft's Edge browser, which is the default internet browser on every Windows computer.

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4.    According to Microsoft, the Microsoft Shopping browser extension is a free tool that automatically scans the internet for coupons and discount codes; offers users price comparison and price history tools; and incorporates a built-in "Microsoft Cashback" system that allows shoppers to earn credits to their Microsoft Rewards account for certain purchases. Microsoft Shopping has purportedly found users over $12.4 billion in savings.

5.    Because of these features, the Microsoft Shopping browser extension appeals to consumers looking for a discount on a product or service that they are already interested in purchasing and have already added to their online shopping carts.

6.    Microsoft Shopping can be used on desktop and laptop computers, and it can also be used on mobile devices by downloading the Microsoft Edge or Microsoft Bing Search apps.

7.    Millions of people in the United States have activated the Microsoft Shopping browser extension during their online purchases.

8.    The Microsoft Shopping browser extension, however, is designed to misappropriate commissions from online marketers, including, but not limited to, website operators, online publications, and content creators, like YouTubers, bloggers, and social media influencers.

9.    Online marketers earn money by participating in affiliate marketing programs. As part of these programs, the online marketer is assigned unique affiliate marketing links and tracking tags, including affiliate marketing cookies. The merchants that work with the online marketers use these tracking tags and affiliate marketing cookies to determine who gets credit for referrals and earns sales commissions on consumers' purchases.

10.    Online marketers direct their followers and viewers to specific products or services via affiliate marketing links that they share on their respective platforms and social media channels.

CLASS ACTION COMPLAINT - 2

11.     When a follower clicks on an online marketer's affiliate link and makes a purchase, that online marketer gets credit for the referral and earns a sales commission.

12.     However, the Microsoft Shopping browser extension cheats these online marketers out of commissions to which they are entitled by altering the checkout process and removing the online marketers' tracking tags and affiliate marketing cookies.

13.     As described in greater detail below, Microsoft programmed the Microsoft Shopping browser extension to systematically misappropriate commissions that belong to online marketers like Plaintiff and class members. More specifically, Microsoft programmed the Microsoft Shopping browser extension to substitute Microsoft's own affiliate marketing cookie in place of an online marketer's affiliate marketing cookie. Microsoft misappropriates online marketers' commissions in this way even though customers are using the online marketers' specific affiliate web links to access the website through which they are purchasing the product or service.

14.     Plaintiff and the Class are online marketers whose commission payments Microsoft has wrongfully misappropriated. Plaintiff brings this case on behalf of herself and all others similarly situated to recover the damages she and the class members have sustained, and to enjoin Microsoft's wrongful conduct going forward.

## II.     JURISDICTION

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Microsoft, there are more than one hundred class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

CLASS ACTION COMPLAINT - 3

16.    This Court has personal jurisdiction over Microsoft because it maintains its principal place of business in Washington.

17.    Venue is proper under 28 U.S.C. § 1391(a) through (d) because Microsoft's headquarters and principal place of business is located in this District, Microsoft resides in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Microsoft's governance and management personnel.

### III.    PARTIES

**A.    Plaintiff**

18.    Shonna Coleman is a resident of Nebraska.

**B.    Defendant**

19.    Microsoft Corporation ("Microsoft" or "Defendant") is a Washington corporation with a principal place of business at 1 Microsoft Way, Redmond in King County, Washington.

### IV.    RELEVANT FACTS

**A.    Background**

**1.    The Microsoft Shopping Browser Extension**

20.    In 2020, Microsoft launched Microsoft Shopping, a browser extension that comes pre-installed on its Microsoft Edge browser—the default internet browser on every Windows computer.

21.    Microsoft touts Microsoft Shopping's ability to save consumers time and money by instantaneously scanning the internet for coupon codes and discounts.

CLASS ACTION COMPLAINT - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

22.    Since its launch of the Microsoft Shopping browser extension in 2020, Microsoft has expanded the product's functionality and compatibility, making its browser extension a standalone product that can be added to competing internet browsers, such as Google Chrome.

23.    Microsoft has also integrated the Microsoft Shopping software into Microsoft's Bing search engine such that consumers using the Firefox or Safari website browsers—two browsers that are not compatible with the Microsoft Shopping browser extension—are still able to use the Microsoft Shopping features.

24.    Microsoft persuades consumers to activate the Microsoft Shopping browser extension by promising to search the internet for coupons that can be applied to items that are already in the consumer's online shopping cart, offering price-comparison and price history tools, and by providing shopping rewards where users can earn cashback for online purchases.

25.    Unlike other coupon browser extensions, which require the user to first download the extension and register for an account in order to access coupons and discounts, Microsoft Shopping is pre-installed on millions of devices and can be used with just a few clicks.

26.    Microsoft Shopping's seamless functionality and integration with Microsoft Edge gives Microsoft a competitive edge, allowing it to reach consumers who are less tech savvy and may be wholly unfamiliar with the concept of browser extensions.

27.    This popularity is buoyed by the fact that all Windows computers—both desktop and laptop computers—come pre-loaded with only one internet browser: Microsoft Edge.

28.    All Windows computers thus come pre-loaded with only one shopping browser extension: Microsoft Shopping.

CLASS ACTION COMPLAINT - 5

29.     Any user who purchases a new Windows computer and wishes to shop online must, therefore, do so using the Microsoft Edge browser, pre-loaded with Microsoft Shopping, unless the user manually downloads a different browser of their choice.

30.     The Microsoft Edge Browser is the third most commonly used web browser in the United States behind Google Chrome and Safari.

31.     Millions of individuals, therefore, use Microsoft Shopping every day. Microsoft claims to have saved shoppers over $12.4 billion U.S. dollars, which averages out to approximately $431 per shopper each year.

## 2.     Online Marketers and the Commission System

32.     With the rise of e-commerce and the ever-increasing popularity of social media platforms like YouTube, Instagram, and TikTok, several retailers have turned to online marketers to promote and market their products to consumers.

33.     Online marketers earn commissions by directing their audience to affiliate links that the marketers publish or share on their various platforms and social media channels.

34.     Affiliate links are web-based hyperlinks that direct consumers to a website where the consumers may purchase the product or service being promoted by the online marketer.

35.     Merchants use tracking tags on their websites to determine whether a consumer landed on the webpage for their product or service and made a purchase after clicking an affiliate link. These merchants can then attribute the sale to the specific online marketer responsible for the affiliate link, providing that online marketer with a commission payment.

## 3.     Microsoft's Misappropriation of Online Marketer Commissions

36.     Unbeknownst to Plaintiff and other online marketers, Microsoft uses the Microsoft Shopping browser extension to manipulate online shoppers' website traffic and network traffic

CLASS ACTION COMPLAINT - 6

transmissions, namely by altering the tracking tags that are transmitted during the checkout process.

37.     Microsoft thus surreptitiously takes credit for sales commissions that it did not earn—sales that instead resulted from a consumer using an online marketer's unique marketing affiliate link.

38.     Microsoft Shopping displaces tracking tags that identify a given online marketer as the source of the referral, substitutes Microsoft's own tracking tags, and holds Microsoft out as the referrer of the specific product and/or service.

39.     This misappropriation happens even though the sale in question emanated from an online marketer's specific affiliate marketing link for a specific product or service.

40.     Analysis of network traffic on websites where the Microsoft Shopping browser extension is running reveals electronic transmissions and communications between an online shopper's web browser, the given website, and other third parties.

41.     This network traffic is typically invisible to ordinary website users and operates in the background of the ordinary website user's online experience.

42.     Reviewing this network traffic reveals that when an online shopper activates Microsoft Shopping, the Microsoft Shopping browser extension silently and invisibly removes affiliate cookies and tracking tags that would otherwise credit the rightful salesperson—the online marketer—with the sale of that particular product or service.

43.     The images below illustrate what happens when a shopper clicks on an online marketer's affiliate link in order to purchase a product or service that the online marketer is promoting and proceeds to the merchant's website to purchase—or "checkout"—that product or service. Importantly, whether the marketer will be credited with the referral and commission

CLASS ACTION COMPLAINT - 7

ultimately depends on whether the shopper has activated the Microsoft Shopping browser extension:



Image 1. This screenshot was taken during the checkout process at bestbuy.com after navigating to that webpage from an online marketer's affiliate marketing link.

44.    Image 1 shows the merchant's website markup (left), which is what ordinary website visitors see, and the inspection panel (right), which provides a glimpse into what is happening in the background before the Microsoft Shopping browser extension is activated.

45.    In the Image, the user navigated to bestbuy.com by clicking on an online marketer's affiliate marketing link, added an item to their cart, and proceeded to the checkout page.

46.    The extensions tab on the right side of Image 1 shows that the Microsoft Shopping browser extension is available, but has not yet been activated on this particular webpage. At this point, the campaign and partner cookies correctly attribute the referral to "Benable" as shown in Image 2:

CLASS ACTION COMPLAINT - 8



Image 2. This image is a zoomed-in version of Image 1, showing that the affiliate marketing cookies correctly credit the online marketer ("Benable") with the referral and forthcoming sale of the product.

47.    In this scenario, the online marketer (Benable) that the merchant (BestBuy) partnered with is set up to get credit for the referral and should receive a commission if the shopper completes their purchase.

48.    However, as demonstrated in the images below, once the Microsoft Shopping browser extension is activated, the "campaign" and "partner" cookies are removed and replaced with Microsoft's own affiliate marketing cookie.

49.    As seen in Image 3, Microsoft Shopping created a pop-up alerting the user they could earn cash back on the purchase:

CLASS ACTION COMPLAINT - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



Image 3. Microsoft Shopping creates a pop-up banner on the shopper's web browser, enticing the shopper to activate the browser extension even though it did not identify any coupons for the shopper to use in connection with this purchase.

CLASS ACTION COMPLAINT - 10

50.     If the user clicks the blue "Ok" button in the pop-up shown in Image 3, Microsoft Shopping is activated, and Microsoft Shopping replaces the online marketer's affiliate marketing cookies with Microsoft's own affiliate marketing cookies ("198_BingRebatesbyMicrosoft_0) as shown in Images 4 and 5 below:



Image 4. This screenshot was captured during checkout after the shopper selected the blue "Ok" button shown in Image 3, thereby activating the Microsoft Shopping browser extension. The green check mark in the right column confirms the activation of the Microsoft Shopping browser extension by stating that "Cash back is activated!"

CLASS ACTION COMPLAINT - 11

Image 5. This is a zoomed-in screenshot that shows that Microsoft's own marketing affiliate cookies are now identified as the campaign and partner.

51.    Images 4 and 5 depict how Microsoft alters the checkout process and substitutes a specific online marketer's own cookies (shown in Image 2) with Microsoft's cookies.

52.    In this scenario, Microsoft gets credit for the referral and ultimate purchase of the product even though Microsoft neither helped the shopper identify the product nor provided the shopper with any additional discounts or coupons for the product.

**B.    The Exploitation of Last-Click Attribution and Affiliate Marketing Links.**

53.    When a shopper clicks on an online marketer's affiliate marketing link, a tracking tag is generated that allows the merchant to know who to credit with the referral and commission for the sale.

54.    The tracking tag is saved on the shopper's browser in the form of a cookie that will expire sometime in the future—typically within 2-30 days, depending on the particular affiliate

CLASS ACTION COMPLAINT - 12

program. Preserving the cookie in the browser for a specified number of days ensures that, even if it takes a few days for the shopper to complete their purchase, the online marketer will still get credit for the sale.

55.    When it comes to online referral commissions from affiliate marketing links, the industry standard used for crediting sales is "last-click attribution," which means that the last click determines who gets credit for a sale.

56.    Consider a hypothetical: a customer clicks on a blogger's affiliate link to a particular product but does not purchase the product. A few weeks pass, and the customer sees a different online marketer's YouTube video promoting the same product. The customer clicks on this second online marketer's affiliate link for the product and completes their checkout.

57.    In this scenario, last-click attribution gives the second online marketer, the YouTuber, credit for the sale. The blogger does not get credit for the sale. This happens because, when the customer clicked on the YouTuber's affiliate link and opened the new checkout tab, the YouTuber's affiliate cookie displaced the blogger's affiliate cookie.

58.    The Microsoft Shopping browser extension is purposely designed to exploit the last-click attribution process, and it achieves this by producing pop-ups during the checkout process in order to simulate referral clicks.

59.    Stated differently, Microsoft has designed its browser extension in a manner that mimics the hypothetical described above. Microsoft forces users to actively engage with the Microsoft Shopping browser extension—i.e., click buttons—in order to receive a discount, test coupons, or earn cash back. These clicks are important to Microsoft because, without them, the online marketer in question will still be credited with the sale and receive any corresponding

CLASS ACTION COMPLAINT - 13

1    commission payment. Microsoft only gets credit for the sale if the online shopper clicks on the

2    pop-up and activates Microsoft Shopping.

3    60.    Microsoft's goal, therefore, is to entice online shoppers to activate Microsoft

4    Shopping even when the browser extension has not identified any applicable coupons.

5    **C.    Activation of the Microsoft Extension**

6    61.    Microsoft persuades online shoppers to activate the Microsoft Shopping browser

7    extension in several different ways, each of which displaces the rightful referrer and steals

8    commission credit for sales that Microsoft did not influence, much less generate.

9

10    62.    One way that Microsoft entices consumers to activate the Microsoft Shopping

11    extension and steals credit for sales is merely by virtue of the consumer using Microsoft as their

12    internet browser. Consumer A clicks on Online Marketer A's affiliate link and adds a

13    recommended product to their online shopping cart. As Consumer A proceeds through checking

14    out on the merchant's website, Microsoft Shopping creates a pop-up box telling Consumer A that

15    "Microsoft Edge found coupons," persuading Consumer A to click the "Try all coupons" button

16    on the pop up. Once Consumer A clicks this button, Microsoft Shopping discreetly opens a new

17    tab that mimics a referral click, thereby removing Online Marketer A's affiliate marketing cookie

18    and replacing it with Microsoft's own affiliate marketing cookie. By persuading Consumer A to

19    click the "Try all coupons" button, Microsoft thus covertly misappropriates credit for the referral

20    and sale.

21

22    63.    Another way that Microsoft misappropriates credit for sales is by suggesting

23    coupons might be available when none are. In this hypothetical, Consumer B clicks on Online

24    Marketer B's link to a merchant and proceeds to check out to complete the purchase. Online

25    Marketer B's affiliate marketing cookie attaches to the transmission in order to credit the Marketer

26

CLASS ACTION COMPLAINT - 14

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    with the sale. At checkout, however, Microsoft once again creates a pop-up box telling Consumer

2    B that "Microsoft Edge found coupons," persuading Consumer B to click the "Try all coupons"

3    button on the pop up. Consumer B clicks the "Try all coupons" button, but none of the discount

4    codes work. Nevertheless, Microsoft uses Consumer B's action of clicking on the "Try all

5    coupons" button to remove Online Marketer B's affiliate marketing cookie through the same

6    process described in the paragraph above. Microsoft does this even though Microsoft failed to

7    identify a single applicable coupon. Online Marketer B thus loses credit for the referral and a

8    commission from the sale.

9

10        64.    Yet another way in which Microsoft misappropriates credit for sales is by

11    weaponizing Microsoft Shopping's cash back rewards program. In this hypothetical, Consumer C

12    clicks on Online Marketer C's affiliate marketing link, selects the recommended item to purchase,

13    and proceeds to checkout. Through this process, Online Marketer C's unique identifier is generated

14    as a cookie tied to the transaction. Microsoft Shopping is active on Consumer C's browser. Yet

15    again, Microsoft Shopping cannot identify any applicable discount codes that Consumer C could

16    use in the purchase. Not wanting to lose out on the opportunity to misappropriate credit for the

17    sale, Microsoft Shopping recommends that Consumer C activate Microsoft Shopping's cash back

18    rewards feature to "Get up to 3% cash back." Consumer C clicks the "OK" button that accompanies

19    this offer, hoping to get money back. Microsoft then once again simulates a referral click in a new

20    tab, thereby covertly removing Online Marketer C's affiliate marketing cookies and supplanting

21    them with Microsoft's, earning Microsoft credit for the referral and ultimate commission on the

22    sale.

23

24        65.    Each of these three hypotheticals are not, in fact, hypotheticals. Rather, they are

25    depictions of three methods by which Microsoft routinely deploys its browser extension to

26

CLASS ACTION COMPLAINT - 15

misappropriate commissions from their rightful owners—online marketers.

**D.     Plaintiff's Experience**

66.     Plaintiff Shonna Coleman is an influencer and content creator who earns commission payments from affiliate marketing links she shares on social media, including Facebook        (*see,*        *e.g.*,        https://www.facebook.com/share/p/1HYMCVzoAc/, https://www.facebook.com/share/p/15XvJdJwmY/, https://www.facebook.com/share/p/194HujNaX9/)   and   X   (formerly   known   as   Twitter) (@shonnacoleman).

67.     In past years, Ms. Coleman has received substantial commission payments from products purchased via her affiliate marketing links.

68.     Ms. Coleman would have earned more income in the form of commission payments but for Microsoft's scheme to usurp commissions through the Microsoft Shopping browser extension.

69.     Microsoft, through its Microsoft Shopping browser extension, stole credit for sales and conversions that Ms. Coleman originated via her own platforms—sales and commissions effected through the affiliate marketing links that Ms. Coleman shared with her follower base on her social media accounts.

**E.     Damages & Harm**

70.     Plaintiff Coleman and class members were harmed by Microsoft's conduct because the Microsoft Shopping browser extension systematically steals commission payments from their rightful owners—i.e., the online marketer that promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

CLASS ACTION COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

71.    Ms. Coleman promotes products via her social media channels and posts affiliate marketing links to those products.

72.    Ms. Coleman's unique affiliate marketing tag is set as a cookie that identifies her as the specific referrer.

73.    When one of Plaintiff Coleman's followers clicks on one of her affiliate marketing links and adds products to their online shopping cart, Plaintiff Coleman's unique affiliate marketing tag—which is set as a cookie—attaches to the shopping session and attributes the referral and sale of the product to Plaintiff Coleman. As a result, Plaintiff Coleman is credited with the sale and corresponding commission payment.

74.    But, if one of Ms. Coleman's followers activates the Microsoft Shopping browser extension during checkout by clicking on a button to apply coupons or get cash back, Microsoft will remove Ms. Coleman's affiliate marketing cookie and replace it with Microsoft's own affiliate marketing cookie, thereby stealing both credit for the referral and the resulting commission payment.

75.    Ms. Coleman spends a substantial amount of time and money cultivating her follower base and promoting the products that she features in her affiliate marketing links.

76.    Ms. Coleman relies on the stream of income that she generates through her work as a content creator and from the commissions that she earns via her affiliate marketing links.

77.    Ms. Coleman was harmed by Microsoft, via the Microsoft Shopping browser extension, which deprived her of referral fees and sales commissions to which she is rightfully entitled as the generator of those referrals and sales.

78.    The Microsoft Shopping browser extension is activated during millions of online purchases each year. In the absence of the Microsoft Shopping browser extension, Plaintiff

CLASS ACTION COMPLAINT - 17

1    Coleman and class members would have earned more money in the form of referral fees and sales

2    commissions from their respective affiliate marketing links.

3        79.    Plaintiff Coleman continues to devote time and energy to content creation to

4    generate commissions. Plaintiff Coleman accordingly faces future harm in the form of stolen

5    referral fees and sales commissions because the Microsoft Shopping browser extension continues

6    to steal affiliate marketing commissions with each passing day.

7                          V.    CLASS ALLEGATIONS

8        80.    Plaintiff, on behalf of herself and as a class action under the Federal Rules of Civil

9

10   Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seeks damages and injunctive relief on

11   behalf of the members of the following Class and constituent Subclass (collectively, the "Class"):

12       **Nationwide Class:** All persons in the United States who participated in an
         affiliate commission program with a United States eCommerce merchant and
13       had commissions diverted to Microsoft as a result of the Microsoft Shopping
         browser extension.
14

15       **Nebraska Subclass:** All persons in Nebraska who, participated in an affiliate
         commission program with a United States eCommerce merchant and had
16       commissions diverted to Microsoft as a result of the Microsoft Shopping
         browser extension.
17

18       81.    Excluded from the Class are Defendant and its officers, directors, management,

19   employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to

20   whom this case is assigned, as well as those judges' immediate family members, judicial officers

21   and their personnel, and all governmental entities.

22

23       82.    **Numerosity:** Members of the Class are so numerous that joinder is impracticable.

24   There are at least tens of thousands of members of the Class, geographically dispersed throughout

25   the United States, such that joinder of all Class members is impracticable. There are at least

26   thousands of members of the Subclass, such that joinder of all Subclass members is likewise

     impracticable.

CLASS ACTION COMPLAINT - 18

83.    **Typicality:** Plaintiff's claims are typical of the claims of the other class members. The factual and legal bases of Defendant's liability are the same and resulted in injury to Plaintiff and all other members of the Class.

84.    **Adequate representation:** Plaintiff will represent and protect the interests of the Class both fairly and adequately. Plaintiff has retained counsel competent and experienced in complex class action litigation. Plaintiff has no interests that are antagonistic to those of the Class, and her interests do not conflict with the interests of the class members she seeks to represent.

85.    **Commonality and Predominance:** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Class and because class members share a common injury. Thus, determining damages with respect to the Class as a whole is appropriate. The common applicability of the relevant facts to the claims of Plaintiff and the proposed Class are inherent in Defendant's wrongful conduct because the injuries incurred by Plaintiff and each member of the Class arose from the same conduct alleged herein.

86.    There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

a.    Whether Defendant programmed and designed the Microsoft Shopping browser extension in a manner that wrongfully credits it as the originator of sales referrals;

b.    Whether the scheme described herein results in Microsoft being awarded commission payments it did not rightfully earn;

c.    Whether Microsoft was unjustly enriched to the detriment of Plaintiff and class members in the form of commission payments;

CLASS ACTION COMPLAINT - 19

d. Whether Defendant, through the actions alleged in this complaint, violated consumer protection laws in the state of Nebraska;

e. Whether consumers and class members have been damaged by Defendant's conduct; and

f. The nature and scope of appropriate injunctive relief.

87.     **Superiority:** Class proceedings on these facts are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be ensured.

88.     Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

CLASS ACTION COMPLAINT - 20

- Defendant has acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

- The claims of class members are comprised of common issues whose resolution in a class trial would materially advance this litigation.

## TOLLING OF THE STATUTES OF LIMITATIONS

89.    All applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and class members could not have reasonably discovered Defendant's practice of displacing their affiliate marketing tracking tags and cookies, surreptitiously manipulating network transmissions, and allowing Microsoft to take credit for sales commissions it did not earn.

90.    Defendant was and is under a continuing duty to disclose to Plaintiff and class members its practice of displacing tracking tags that point to online marketers as the source of a referral and substituting its own tracking tags to appropriate commissions that belong to online marketers like Plaintiff and class members. As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE CLASS)

91.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

92.    Plaintiff lacks an adequate remedy at law.

CLASS ACTION COMPLAINT - 21

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

93.    Plaintiff and class members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and class members, not Microsoft.

94.    Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Shopping browser extension wrongfully claiming credit for commissions via last-click attribution.

95.    Microsoft understood that it so benefitted, and it also understood and appreciated that the Microsoft Shopping browser extension would cause the harm described herein.

96.    But for Microsoft's unjust and improper use of the browser extension, Microsoft would not have been credited and awarded commission on sales that resulted from Plaintiff's and class members' respective affiliate marketing links.

97.    As a result of Microsoft's wrongful conduct as alleged in this complaint, Microsoft has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and class members.

98.    Microsoft continues to benefit and profit from the browser extension while Plaintiff and class members continue to have their rightful commission payments diverted to Microsoft.

99.    Microsoft's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including by deploying the Microsoft Shopping browser extension in a manner that wrongfully credits Microsoft with referrals and commissions that Microsoft did not rightfully earn.

100.    The benefit conferred upon, received by, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the benefit.

CLASS ACTION COMPLAINT - 22

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

101.    Equity and good conscience militate against permitting Microsoft to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiff and class members.

**<u>SECOND CAUSE OF ACTION</u>**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

102.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

103.    Plaintiff and class members are engaged in an economic relationship with eCommerce merchants by referring their followers to those merchants through affiliate links. In return, eCommerce merchants provide Plaintiff and class members with referral fees or commissions. These relationships are ongoing, and Plaintiff and class members expect to continue earning commissions in exchange for referrals.

104.    Microsoft is aware of the referral and commission relationship between Plaintiff and class members on the one hand and eCommerce merchants on the other hand.

105.    Through use of the Microsoft Shopping browser extension, Microsoft steals commission payments from Plaintiff and class members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, Microsoft displaces tracking tags that identify online marketers as the source of the referral, substitutes Microsoft's own tracking tags, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link.

106.    Microsoft either intended to usurp commissions from Plaintiff and class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees.

CLASS ACTION COMPLAINT - 23

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

107.    Plaintiff and class members were harmed by Microsoft's conduct because the Microsoft Shopping browser extension deprives Plaintiff and class members of monies that they rightfully earned as the true originators of sales arising from their affiliate marketing links.

108.    Microsoft's conduct was a substantial factor in causing harm to Plaintiff and class members in that, among other things, Plaintiff and class members suffered economic injury by being deprived of commissions that they should have earned from referrals through their affiliate links.

109.    As a result of the above conduct, Microsoft is liable to Plaintiff and class members for damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**CONVERSION**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

110.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

111.    Plaintiff and class members possessed or had a right to possess commissions they earned from referring consumers to products and services sold by eCommerce merchants. The amount of each commission constituted a specific and identifiable sum.

112.    Microsoft intentionally and substantially interfered with Plaintiff's and class members' personal property by usurping commissions and referral fees owed to Plaintiff and class members.

113.    Microsoft, without proper authorization, assumed and exercised the right of ownership over these commissions, in hostility to the rights of Plaintiff and class members, without justification.

114.    Microsoft's wrongful exercise of control over Plaintiff's and class members' personal property constitutes conversion.

CLASS ACTION COMPLAINT - 24

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

115.    Plaintiff and class members neither assented to nor ratified Microsoft's interference with their commissions.

116.    As a direct and proximate result of Microsoft's conversion, Plaintiff and class members were harmed.

117.    Microsoft is liable to Plaintiff and class members for damages and costs permitted by law.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE WASHINGTON CONSUMER**
**PROTECTION ACT, RCW §§ 19.86, *ET SEQ.***
**(ON BEHALF OF THE NATIONWIDE CLASS)**

118.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

119.    Microsoft is a "person" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1), and it conducts "trade" and "commerce" within the meaning of RCW 19.86.010(2). Plaintiff and other members of the Class are "persons" within the meaning of RCW 19.86.010(1).

120.    Microsoft is based in Washington and made the decision to design the Microsoft Shopping browser extension to misappropriate online marketers' credit for sales and commissions by altering the checkout process and removing online marketers' tracking tags and affiliate marketing cookies.

121.    Microsoft's unfair acts have injured a substantial portion of the public. Microsoft's general course of conduct, as alleged herein, is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

122.    As a direct and proximate result of Microsoft's unfair acts and practices, Plaintiff and class members suffered injury in fact.

CLASS ACTION COMPLAINT - 25

123.    As a result of Microsoft's conduct, Plaintiff and members of the Class have suffered actual damages.

124.    Plaintiff and class members are entitled to an order enjoining the conduct complained of herein and ordering Microsoft to take remedial measures to stop its conduct; actual damages; treble damages pursuant to RCW 19.86.090; costs of suit, including reasonable attorneys' fees and costs; and any further relief as the Court may deem just and proper.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF NEBRASKA'S UNIFORM DECEPTIVE**
**TRADE PRACTICES ACT (UDTPA)**
**NEB. REV. STAT. §§ 87-301, *ET. SEQ.***
**(ON BEHALF OF THE NEBRASKA SUBCLASS)**

125.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

126.    Nebraska's UDTPA makes it unlawful to engage in deceptive trade practices.

127.    Microsoft violated Nebraska's UDTPA through its conduct as alleged herein. In particular, Microsoft's conduct constitutes a violation of Sections 87-302(a)(2), (a)(3), (a)(5), (a)(6), (a)(12), and (a)(16).

128.    Microsoft is liable to Plaintiff and the Nebraska Subclass members for damages, costs, and injunctive relief as permitted by law.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF NEBRASKA CONSUMER PROTECTION ACT (NCPA)**
**NEB. REV. STAT. §§ 59-1602, *ET. SEQ.***
**(ON BEHALF OF THE NEBRASKA SUBCLASS)**

129.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

130.    The NCPA provides, in relevant part, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."

131.    Microsoft violated the NCPA through its conduct as alleged herein.

CLASS ACTION COMPLAINT - 26

132.    Microsoft's conduct affected the public interest because it was widespread. Affiliate marketing links are ubiquitous, as is the Microsoft Shopping browser extension.

133.    Microsoft is liable to Plaintiff and the Nebraska Subclass members for damages, costs, and injunctive relief as permitted by law.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A.    Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B.    Enter judgment in favor of Plaintiff and the Class;

C.    Enter injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class, including to prevent the Microsoft Shopping browser extension from taking credit for sales it did not originate;

D.    Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and restitution to which Plaintiff and the Class are entitled;

E.    Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F.    Award Plaintiff and the Class pre- and post-judgment interest as provided by law;

G.    Enter such other orders as may be necessary to restore to Plaintiff and the Class any money and property acquired by Microsoft through its wrongful conduct;

H.    Award Plaintiff and the Class reasonable litigation expenses and attorneys'

CLASS ACTION COMPLAINT - 27

1    fees, as permitted by law; and

2        I.        Award such other and further relief as the Court deems necessary and

3    appropriate.

4                        **VIII.    JURY DEMAND**

5        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

6    issues triable as of right.
7

8

9    DATED: January 21, 2025            Respectfully submitted,

10

11                        By: */s Jason T. Dennett*
                                Jason T. Dennett, WSBA #30686
12                              jdennett@tousley.com
                                */s Joan Pradhan*
13                              Joan Pradhan, WSBA #58134
                                jpradhan@tousley.com
14                              1200 Fifth Avenue, Suite 1700
                                Seattle, Washington 98101
15                              Telephone:  (206) 682-5600

16                              Joshua P. Davis*
                                jdavis@bm.net
17                              BERGER MONTAGUE PC
                                505 Montgomery Street, Suite 625
18                              San Francisco, CA 94111
                                T.415.215.0962; F.215.875.4604
19

20                              Sophia M. Rios*
                                srios@bm.net
21                              BERGER MONTAGUE PC
                                8241 La Mesa Blvd., Suite A
22                              La Mesa, CA 91942
                                T. 619.489.0300
23

24                              E. Michelle Drake*
                                emdrake@bm.net
25                              Marika K. O'Connor Grant*
                                moconnorgrant@bm.net
26                              BERGER MONTAGUE PC
                                1229 Tyler Street NE, Suite 205

CLASS ACTION COMPLAINT - 28

Minneapolis, MN 55413
T. 612.594.5999; F. 612.584.4470

*pro hac vice forthcoming*

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 29

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992